IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**JOHN PAUL BURNETT**                                                      **PLAINTIFF**

v.                                                                                                        **No. 3:19CV175-JMV**

**DESOTO COUNTY JAIL**
**LT. CHAD WICKER**
**SHERIFF BILL ROSCOE**
**DESOTO COUNTY**
**STATE OF MISSISSIPPI**                                                   **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of John Paul Burnett, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants provided inadequate medical care for his psychiatric problems and his placement in segregation. The defendants have moved for summary judgment, arguing, among other things, that the plaintiff did not exhaust his prison administrative remedies before filing the instant suit. The plaintiff did not respond to the motion, and the deadline to do so has expired. For the reasons set forth below, the defendants' motion will be granted, and this case will be dismissed without prejudice for failure to exhaust administrative remedies.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those

- 2 -

made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198

(5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita, supra*. (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and

common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

**Undisputed Material Facts**

John Paul Burnett became a detainee at the DeSoto County Detention Center on November 14, 2018. He was there awaiting trial on charges of simple assault and later pled guilty to the charge in DeSoto County Circuit Court, where he was sentenced to serve three (3) years on October 21, 2019. Following sentencing, Burnett was transferred out of the facility on November 20, 2019. Mr. Burnett presents an allegation of inadequate medical care regarding his prescription medication for mental health issues. Because Mr. Burnett refers in his complaint to his placement in segregated housing in conjunction with the allegation that his medications were withheld, the court will give him the benefit of the doubt and treat the segregated housing allegation as a separate claim.

On or about December 2, 2018, Mr. Burnett was seen by Bridget Burford, a nurse at the detention facility. See Detainee Doctors Visit History, Exhibit A.[1] At the time, he was taking Haldol,

---

[1] The exhibits referenced in this memorandum opinion may be found attached to the defendants' Memorandum of Authorities in Support of Their Motion for Summary Judgment [31].

a drug used in the treatment of schizophrenia and related mental issues.[2]  Haldol, at 5mg, had been issued to Mr. Burnett on November16, 2018, for daily use.  See Medication Detail, Exhibit B.  Following the December 2 exam, in which he complained of "voices ... tell[ing] him to do bad things," Dr. Thompson ordered that the Haldol be discontinued, replaced with Risperdal.[3]  See Med Detail, Exhibit B (see also, Exhibit A).

On November 28, 2018, two weeks after his arrival, Mr. Burnett was caught hoarding medications.  See Exhibit B.  Though this was a violation of jail rules for inmates, he was ultimately given only a warning.  As his Medication Detail indicates, he continued receiving his Risperdal, 4mg, through December 23, 2018.  *Id*.  On December 21, 2018, Mr. Burnett submitted a medical services request.  See Exhibit C.  In it, he claimed that his "psych medicine is not working ... not strong enough."  *Id*.; see also Exhibit A, December 21, 2018, entry.  In response to that request, on December 24, 2018, his Risperdal dosage was increased from 4mg to 6mg.  See Medication Detail, Exhibit B.

Mr. Burnett's Medication Detail demonstrates that daily doses of Risperdal at 6mg continued through February 19, 2019.  *Id*.  However, on February 18, 2019, Burnett was caught for a *second* time hoarding his medications.  See Rule Violation report, Exhibit D.  As the report indicates, he possessed multiple different types of medication.  An investigation revealed that inmates were swapping pills for tattoos.  See Incident Report, Exhibit E.  As punishment, Mr. Burnett was placed in segregation for 15 days.  Under jail policy, he was given a Segregation Health Screening prior to

---

[2] Haloperidol, marketed under the trade name Haldol among others, is a typical antipsychotic medication. Haloperidol is used in the treatment of schizophrenia, tics in Tourette syndrome, mania in bipolar disorder, nausea and vomiting, delirium, agitation, acute psychosis, and hallucinations in alcohol withdrawal.

[3] Risperidone, sold under the brand name Risperdal among others, is an atypical antipsychotic.  It is used to treat schizophrenia and bipolar disorder, among others.

being placed in segregation. See Exhibit F. Because he was – for the second time – caught hoarding instead of taking the medications prescribed to him, his Risperdal and Zantac[4] prescriptions were discontinued on February 19, 2019.

Notably, Mr. Burnett *never filed a grievance with the jail* – neither regarding his medications being discontinued nor for being placed in segregation. As set forth above, he was very familiar with the jail's kiosk system. The Medical Services request (Exhibit C) was submitted through the jail's kiosk system for inmates. In fact, Mr. Burnett used the kiosk on four different occasions in March 2019, but none of his submissions were grievances. See all four (4) kiosk requests from March 2019, (Exhibit G) (requesting information on his court date and inquiring as to reading materials).

In sum, Mr. Burnett was prescribed Risperdal as a replacement for Haldol not long after he became an inmate at the DeSoto County Correctional Facility. Less than a week later, he was caught hoarding those pills, a violation of jail procedures for which he was given a warning. He soon thereafter requested stronger medications, and his Risperdal dosage was increased from 4mg to 6mg. Less than two months later, he was again caught hoarding pills, swapping them for tattoos. This time, he was placed in 15-day isolation, and because he was not taking his medications (instead trading it for tattoos), his prescription was discontinued. Upon his exit from isolation and throughout the entire time that he remained an inmate, Mr. Burnett filed no grievance as to either: (1) his segregation, or (2) his medications being discontinued.

### Failure to Exhaust Administrative Remedies

The documents the parties have provided reveal that the plaintiff did not exhaust the jail grievance process before filing the instant suit. Congress enacted the Prison Litigation Reform

---

[4] Mr. Burnett was also prescribed Zantac; however, that drug is not at issue in his Complaint.

Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress meant for the exhaustion requirement to be an effective tool to help weed out the frivolous claims from the colorable ones:

> Prisoner litigation continues to 'account for an outsized share of filings' in federal district courts. *Woodford v. Ngo*, 548 U.S. 81, 94, n. 4, 126 S.Ct. 2378 (2006) (slip op., at 12, n.4). In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. Most of these cases have no merit; many are frivolous. Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law. The challenge lies in ensuring that the flood of non-meritorious claims does not submerge and effectively preclude consideration of the allegations with merit. *See Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).
>
> Congress addressed that challenge in the PLRA. What this country needs, Congress decided, is fewer and better prisoner suits. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (PLRA intended to "reduce the quantity and improve the quality of prisoner suits"). To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good. Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit.

*Jones v. Bock*, 549 U.S. 199, 203 (2007).

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict

approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. The Supreme Court has also recognized the need for a prisoner to face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

The DeSoto County Detention Center has a grievance system in place, which is accessible through an electronic kiosk system. Mr. Burnett was familiar with the kiosk system, as he used it at least four times during his stay at the jail. He did not, however, file a grievance regarding either his

medical care or his placement in segregation. As such, he failed to exhaust the administrative remedies available to him, and the instant case will be dismissed without prejudice for that reason.

## Conclusion

For the reasons set forth above, the defendants' motion for summary judgment will be granted, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 14th day of September, 2020.

/s/   Jane M. Virden
UNITED STATES MAGISTRATE JUDGE